THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | **Crim No.** |
| : | |
| **v.** : | **VIOLATIONS:** |
| : | |
| **SHERON SPANN** : | **18 U.S.C. § 208** |
| : | |
| : | *Let this be filed.* |
| **Defendant.** : | *Royce C Lamberth* |
| : | *U.S.D.J. 5/19/23* |
| : | |

## STATEMENT OF OFFENSE IN SUPPORT OF GUILTY PLEA

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Sheron Spann, with the concurrence of her attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

1. Sheron Spann (S. Spann) is married to Thomas Sylvester Spann III (T. Spann).

2. T. Spann cofounded a company, Enlightened Inc., with Antwanye Ford ("Ford") and Andre Rogers ("Rogers"). T. Spann also worked for a company called LogApps, which was a subcontractor to a company called 8-Koi.

3. In July 1997, S. Spann signed documents as a witness for Enlightened's Articles of Incorporation in Maryland.

4. Thereafter, through in or around 2005, Enlightened repeatedly filed documents with the state of Maryland and in the District of Columbia establishing that T. SPANN was

1

Enlightened's vice president.

5. In August 2002, the United States General Services Administration (GSA) awarded Enlightened an information technology contract in response to a proposal submitted by T. SPANN where T. SPANN was listed as Enlightened's Vice President.

6. On or around April 16, 2007, S. Spann began working in the Contracting Office for the U.S. Office of Personnel Management (OPM).

7. Since 2007, Enlightened's documents filed with the state of Maryland and the District of Columbia have not contained the name of T. Spann.

8. On or about August 17, 2011, S. Spann used her government email address to propose to an OPM Contracting Officer Representative that OPM invite Enlightened to bid on a particular solicitation to develop the case management software that supports background investigations for federal employees and contractors. The OPM Contracting Officer Representative responded that she was "fine with" including Enlightened, but that to her knowledge, "Enlightened doesn't really focus on development, their focus is integration."

9. On or about September 23, 2011, OPM awarded Enlightened a Blanket Purchase Agreement for the development and administration of the case management system that supports the background investigations for federal employees and contractors. S. Spann served as the OPM point of contact on the contract. She also served as the primary Contract Specialist who prepared the contract documents. The contract had a funding ceiling of $4,500,000.00 and was scheduled to end on September 25, 2016.

10. Through S. SPANN's authority in her role within OPM's contracting office, she oversaw OPM's Blanket Purchase Agreement with Enlightened. Work under the contract

surpassed the original funding ceiling, through modifications and three work orders, to exceed $25 million.

11. On or about April 8, 2017, OPM awarded Enlightened a 3-month bridge contract through on or about October 7, 2017, at a value of approximately $1.5 million. This bridge contract was awarded to Enlightened without competition based on the work completed on the original Blanket Purchase Agreement for services to develop the case management system for the background investigations for federal employees and contractors that S. Spann assisted in awarding and modifying from 2011 through 2017.

12. On or about September 29, 2017, OPM awarded Enlightened a two-year contract valued at $6,343,100.80. Enlightened previous work with OPM was specifically cited as a determining evaluation factor that qualified Enlightened over its competitors. Enlightened earned approximately $7,358,400.00 for work completed on this contract.

13. At the same time that S. Spann was overseeing OPM's contracts with Enlightened, S. Spann was deriving a personal financial benefit from Enlightened through an intermediary company Enlightened utilized as one of its contractors, Tier 1 LLC (also referred to as "Tier 1" and "Tier I").

14. S. Spann did not disclose to OPM the nature or extent of her connections with Enlightened.

15. In course of her employment at OPM, S. Spann completed OPM's annual Ethics Trainings in 2011 and 2012, and 2014 through 2017. Several of these trainings reviewed laws related to conflicts of financial interest, including 18 U.S.C. § 208, which prohibits an employee from participating personally or substantially in government decisions in which the employee or

his or her spouse has a financial interest.

16. According to a background check performed by OPM's National Background Investigations Bureau in 2013 to determine whether T. SPANN was eligible for a security clearance, T. Spann worked at Enlightened from 1999 through September 2005 as a Consultant. T. Spann then worked as a 1099 self-employed employee for Enlightened from 2005 through at least 2013. T. Spann's self-employment business license is under the name Tier 1, LLC. During this time, T. SPANN worked full time with Enlightened, performed no work for other companies, and that Rogers oversaw all of his work.

17. S. Spann completed an annual Confidential Financial Disclosures Reports (OGE Form 450) as required by the U.S. Office of Government Ethics (OGE) and OPM. From 2013-2018, S. Spann disclosed the following information regarding Tier 1:

   a. In 2013 and 2014, in OGE Form 450's Part I: Reportable Assets and Income, S. Spann reported that she held a jointly-held privately-held business, Tier 1. S. Spann reported that she was Vice President of Tier 1.

   b. In 2015, in OGE Form 450's Part I: Reportable Assets and Income, S. Spann reported that she held a jointly-held privately-held business, but she no longer provided its name; in Part III: Outside Positions, S. Spann reported that she was Vice President of Tier 1.

   c. In 2016, in OGE Form 450's Part I: Reportable Assets and Income, S. Spann reported that she held a jointly-held privately-held "IT consulting services" business, and she did not report any outside positions.

   d. In 2017, in OGE Form 450's Part I: Reportable Assets and Income, S. Spann

reported that she held a jointly-held privately-held "IT consulting services" company, but she checked the box for "no longer held" next to this disclosure; in Part III: Outside Positions, S. Spann reported that she was Vice President of Tier 1, but checked the box for "no longer held" next to this disclosure.

e. In 2018, in OGE Form 450's Part I: Reportable Assets and Income, S. SPANN reported that her spouse held a privately-held "IT consulting services" company; in Part III: Outside Positions, S. Spann reported no position with Tier 1.

18. On or about March 4, 2013, an OPM's Ethics Official discussed the jointly-owned consulting business that S. Spann reported on her OGE Form 450. S. Spann explained that she understood the criminal penalties associated with conflicts of interest, and stated that the business she held jointly with her husband did not have contracts with OPM and never would while she was employed with OPM.

19. In or around April 2017, OPM's Director of Procurement Operations discussed conflicts of interests with S. Spann. S. Spann stated that her husband's IT business was not a concern and explained that she would have no conflicts of interest in her role as Division Director of Contracts and a Contracting Officer.

20. Financial records for Tier 1, LLC demonstrate approximately $735,973.43 of deposits from Enlightened, Inc. from March 2012 through April 2017.

21. Financial documents reflect a flow of funds from Enlightened to TIER 1, LLC, to make payments for accounts that benefited both S. Spann and T. Spann, including an American Express account and vehicle payments to U.S. Bank, SunTrust Bank, and Chrysler Capital.

22. S. Spann, while supervising the award of contracts for OPM, also awarded a contract worth $495,670.71 to 8-Koi; the proposal for the contract was written by T. Spann acting for Log Apps. This contract remains active as of March 23, 2023.

Respectfully Submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By:    /s/ *Elizabeth Aloi*
Elizabeth Aloi
Assistant United States Attorney
D.C. Bar No. 1015864
601 D Street, N.W., Fifth Floor
Washington, D.C. 20530
Office: 202-252-7212
Elizabeth.Aloi@usdoj.gov

## DEFENDANT'S ACCEPTANCE

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all of the facts known to me regarding this offense. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crime charged.

I have read every word of this Statement of Offense. Pursuant to Fed. R. Cr. P. 11, after consulting with my attorney, I agree and stipulate to this Statement of Offense, and declare under penalty of perjury that it is true and correct.

Date: 03/31/2023

SHERON SPANN
Defendant

I have discussed this Statement of Offense with my client, Sheron Spann. I concur with her decision to stipulate to this Statement of Offense.

Date: 3/31/23

Danny Onorato
Attorney for the Defendant