UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| v. : | No. 23-CR-111 (RCL) |
| SHERON SPANN, : | |
| Defendant. : | |

## UNITED STATES' SENTENCING MEMORANDUM

Defendant Sheron Spann helped to direct government contracts worth millions of dollars to her husband and his companies, despite being prohibited from participating in government decisions in which she or her husband had a financial interest. When the Defendant learned of the Government's investigation of this conduct, however, she promptly, and, to the best of the Government's knowledge, thoroughly, took responsibility for her conduct. For this reason, she should receive a probationary sentence within the applicable United States Sentencing Guidelines (U.S.S.G. or "Sentencing Guidelines") range.

### I. Procedural Background

On April 4, 2023, the Defendant was charged by Information with one count of violating 18 U.S.C. § 208 (Acts Affecting a Personal Financial Interest). On May 19, 2023, the Defendant entered a guilty plea to the Information as part of a plea agreement with the United States. She also agreed to resign from her employment with the United States Office of Personnel Management. Sentencing has been set for September 21, 2023.

## II. Factual Background

The Defendant is married to Thomas Sylvester Spann III (T. Spann). T. Spann cofounded a company, Enlightened Inc., with two other individuals. The Defendant was involved in founding of the company; in July 1997, she signed documents as a witness for Enlightened's Articles of Incorporation in Maryland. Following its incorporation, through 2005, Enlightened repeatedly filed documents with the state of Maryland and in the District of Columbia establishing that T. Spann was Enlightened's Vice President. For example, in August 2002, the United States General Services Administration (GSA) awarded Enlightened an information technology contract in response to a proposal submitted by T. Spann where T. Spann was listed as Enlightened's Vice President.

Several years later, on April 16, 2007, the Defendant began working in the Contracting Office for the U.S. Office of Personnel Management (OPM). Contemporaneous with that employment, T. Spann's name was removed from Enlightened's incorporation paperwork. Since 2007, Enlightened's documents filed with the state of Maryland and the District of Columbia have not contained the Defendant's husband's name.

On August 17, 2011, the Defendant used her government email address to propose to an OPM Contracting Officer Representative that OPM invite Enlightened to bid on a particular solicitation to develop the case management software that supports background investigations for federal employees and contractors. The OPM Contracting Officer Representative responded that she was "fine with" including Enlightened, but that to her knowledge, "Enlightened doesn't really focus on development, their focus is integration."

On September 23, 2011, OPM awarded Enlightened a Blanket Purchase Agreement for the development and administration of the case management system that supports the background

investigations for federal employees and contractors. The Defendant served as the OPM point of contact on the contract. She also served as the primary Contract Specialist who prepared the contract documents. The contract had a funding ceiling of $4,500,000.00 and was scheduled to end on September 25, 2016. Through the Defendant's authority in her role within OPM's contracting office, she oversaw OPM's Blanket Purchase Agreement with Enlightened. Work under the contract surpassed the original funding ceiling, through modifications and three work orders, to exceed $25 million.

OPM subsequently awarded Enlightened a 3-month bridge contract valued at approximately $1.5 million. This bridge contract was awarded to Enlightened without competition based on the work completed on the original Blanket Purchase Agreement for services to develop the case management system for the background investigations for federal employees and contractors that the Defendant assisted in awarding and modifying from 2011 through 2017.

On or about September 29, 2017, OPM awarded Enlightened a two-year contract valued at $6,343,100.80. Enlightened previous work with OPM was specifically cited as a determining evaluation factor that qualified Enlightened over its competitors. Enlightened earned approximately $7,358,400.00 for work completed on this contract.

At the same time that the Defendant was overseeing OPM's contracts with Enlightened, she was deriving a personal financial benefit from Enlightened through an intermediary company Enlightened utilized as one of its contractors, Tier 1 LLC (also referred to as "Tier 1" and "Tier I"). The Defendant did not disclose to OPM the nature or extent of her connections with Enlightened.

In course of her employment at OPM, the Defendant completed OPM's annual Ethics Trainings in 2011 and 2012, and 2014 through 2017. Several of these trainings reviewed laws

related to conflicts of financial interest, including 18 U.S.C. § 208, which prohibits an employee from participating personally or substantially in government decisions in which the employee or his or her spouse has a financial interest.

According to a background check performed by OPM's National Background Investigations Bureau in 2013 to determine whether T. Spann was eligible for a security clearance, T. Spann worked at Enlightened from 1999 through September 2005 as a Consultant. T. Spann then worked as a 1099 self-employed employee for Enlightened from 2005 through at least 2013. T. Spann's self-employment business license is under the name Tier 1, LLC. During this time, T. Spann worked full time with Enlightened, and performed no work for other companies.

The Defendant completed an annual Confidential Financial Disclosures Reports (OGE Form 450) as required by the U.S. Office of Government Ethics (OGE) and OPM. From 2013 to 2018, the Defendant disclosed the following information regarding Tier 1:

- In 2013 and 2014, on OGE Form 450's Part I: Reportable Assets and Income, the Defendant reported that she held a jointly held privately held business, Tier 1. The Defendant reported that she was Vice President of Tier 1.

- In 2015, on OGE Form 450's Part I: Reportable Assets and Income, the Defendant reported that she held a jointly held privately held business, but she no longer provided its name; in Part III: Outside Positions, the Defendant reported that she was Vice President of Tier 1.

- In 2016, on OGE Form 450's Part I: Reportable Assets and Income, the Defendant reported that she held a jointly held privately-held "IT consulting services" business, and she did not report any outside positions.

- In 2017, on OGE Form 450's Part I: Reportable Assets and Income, the Defendant reported that she held a jointly-held privately-held "IT consulting services" company, but she checked the box for "no longer held" next to this disclosure; in Part III: Outside Positions, the Defendant reported that she was Vice President of Tier 1, but checked the box for "no longer held" next to this disclosure.

- In 2018, on OGE Form 450's Part I: Reportable Assets and Income, the Defendant reported that her spouse held a privately held "IT consulting services" company; in Part III: Outside Positions, the Defendant reported no position with Tier 1.

On March 4, 2013, an OPM's Ethics Official discussed the jointly owned consulting business that the Defendant reported on her OGE Form 450. The Defendant explained that she understood the criminal penalties associated with conflicts of interest, and she stated that the business she held jointly with her husband did not have contracts with OPM and never would while she was employed with OPM.

In April 2017, OPM's Director of Procurement Operations discussed conflicts of interests with the Defendant. The Defendant stated that her husband's IT business was not a concern and explained that she would have no conflicts of interest in her role as Division Director of Contracts and a Contracting Officer.

Financial records for Tier 1, LLC demonstrate approximately $735,973.43 of deposits from Enlightened, Inc. from March 2012 through April 2017.

Financial documents reflect a flow of funds from Enlightened to TIER 1, LLC, to make payments for accounts that benefited both the Defendant and her husband, including an American Express account and vehicle payments to U.S. Bank, SunTrust Bank, and Chrysler Capital.

The Defendant's husband also worked for a company called LogApps, which was a subcontractor to a company called 8-Koi. The Defendant, while supervising the award of contracts for OPM, also awarded a contract worth $495,670.71 to 8-Koi; the proposal for the contract was written by T. Spann acting for Log Apps. This contract remained active through February 17, 2021.[1]

### III.  The Applicable Sentencing Guidelines

To determine an appropriate sentence, the Court must first accurately calculate the Defendant's advisory Sentencing Guidelines range. *Gall v. United States*, 552 U.S. 38, 49-50 (2007).

The Parties agree on the following Sentencing Guidelines Calculation:

| | |
|---|---|
| Base Offense Level (U.S.S.G §2C1.3): | 6 |
| Actual or Planned Harm to the Government (U.S.S.G. §2C1.3(b)(1)) | +4 |
| Acceptance of Responsibility (U.S.S.G. § 3E1.1) | -2 |
| Adjusted Offense Level | =8 |

At Offense Level 8, the Defendant faces a Sentencing Guidelines compliant sentence of 0 to 6 months' incarceration, and fine range of $2,000 to $20,000.

### IV.  The Appropriate Sentence Considering the Factor Set Forth in Section 3553(a)

To determine an appropriate sentence, after the Court accurately calculates the Defendant's advisory Guidelines range, it should consider the various factors set forth in 18 U.S.C. § 3553(a). *Gall*, 552 U.S. 38 at 49-50 (2007). These factors include the nature and circumstances of the

---

[1] The Statement of Offense docketed with the Defendant's plea agreement erroneously stated that this contract was active as of March 23, 2023.

offense; the history and characteristics of the defendant; and the need for the sentence to promote respect for the law, just punishment, and adequate deterrence. 18 U.S.C. § 3553(a). The United States submits that considering these factors, that a probationary sentence, as permitted at Offense Level 8, is appropriate and not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2). The United States also submits that imposition of a fine within the applicable Guidelines range is appropriate.

First, the nature and circumstances of the offense support a Sentencing Guidelines compliant sentence. Although the Defendant violated the public trust and such conduct must be taken seriously, Enlightened and 8-Koi appear to have performed on the contracts they received and there was no ascertainable loss to the Government.

The second factor that the Court must consider in fashioning an appropriate sentence is the history and characteristics of the defendant. The portrait of the Defendant set forth in the Presentence Report is not one that excuses her behavior, nor provides a reason to depart from the Guidelines recommendations.

The Defendant's sentence must also reflect the seriousness of the offense to promote the rule of law, to provide just punishment, and to provide adequate deterrence. These factors too support a sentence within the applicable Sentencing Guidelines range. The Defendant appears unlikely to reoffend. She has taken responsibility for her actions and resigned from federal service, demonstrating a respect for the rule of law.

### V. Forfeiture and Restitution

The Parties agree that the Court has an obligation to determine whether, and in what amount, mandatory restitution applies under 18 U.S.C. § 3663A. Here, there was no ascertainable loss to the Government that could be attributed to the Defendant's actions.

**VI.      Conclusion**

The Defendant's conduct must not be taken lightly – our Government cannot properly function when the actions of Government officials are not impartial.  The Government asks the Court to impose a probationary sentence consistent with the Sentencing Guidelines.

                Respectfully submitted,

                Respectfully submitted,
                MATTHEW M. GRAVES
                United States Attorney
                D.C. Bar No. 481052

By:    */s/ Elizabeth Aloi*
            Elizabeth Aloi
            D.C. Bar. 1015864
            Assistant United States Attorneys
            601 D Street, N.W.,
            Washington, D.C. 20530
            (202) 695-0610
            Elizabeth.Aloi@usdoj.gov